# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:18-cr-109 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| ANDREY SHUKLIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER REGARDING PAYMENT OF RESTITUTION

This criminal case is before the Court regarding the payment of restitution to victims.

## I. BACKGROUND

On July 25, 2018, a federal grand jury returned a one-count indictment charging Defendant Andrey Shuklin and eleven co-defendants with participating in a RICO conspiracy, in violation of 18 U.S.C. § 1962(d).  (Doc. 3).

In short, Defendants in this case are alleged to have formed and operated approximately a dozen moving companies as part of a criminal enterprise.  (*Id*. at 2-10). Specifically, it is alleged that, over the course of several years, Defendants advertised the companies as certified and reputable moving services for household goods, and then contracted with customers for services and prices that Defendants had no intention of honoring.  (*Id*. at 2-16).  After the moving companies had taken possession of the customers' household goods, Defendants are alleged to have falsely inflated the square footage of the goods and then extorted the victims into paying more money, while effectively holding the customers' belongings hostage.  (*Id*.)  Regardless of whether or

not the customers paid the higher prices, it is alleged that the enterprise may still have either delivered the goods late, or never delivered them at all. (*Id.*) Moreover, the Government alleges that the enterprise would fraudulently form new companies, and furnish members with new identities, in order to avoid detection and continue the scheme. (*Id.*)

To date, only one co-defendant, Roman Iakovlev (8), has been sentenced in this criminal case. Other co-defendants have, however, either entered into plea agreements, or have expressed to the Court that a plea is likely forthcoming. (Docs. 136, 164); (*see* Min. Entry, Oct. 21, 2020).

Prior to Defendant Iakovlev's sentencing, the Government made a conservative estimate of the restitution owed in this case—$2,467,807.39. This amount reflected merely the inflated price quotes that Defendants allegedly demanded of the victims who have been identified to date, but it did not take into account loss resulting from delayed delivery or undelivered property.[1] Additionally, the Government presented a list of the nearly 2,000 identified victims so far, but represented that more victims were consistently coming forwarded. In an effort to avoid delaying sentencing, the parties agreed to the

---

[1] To be clear, the amount used for the restitution calculation was the difference between the inflated price the enterprise quoted each customer and what the move should have actually cost that customer (based on the rate charged per cubic foot, multiplied by the actual cubic feet used). However, this does not account for whether the customer ultimately paid the inflated cost in full, nor does it account for those customers who paid <u>any</u> amount of money but received their household goods late or never at all (*i.e.*, those who paid for a service, whether the price was fair or not, but never received the service). And it certainly does not compensate victims for the goods they never received, or for any items that they needed to replace due to late delivery.

conservative restitution amount of $2,467,807.39 as to Defendant Iakovlev. However, that amount is fully anticipated to increase over the course of this case.

Initially, the Government intended to provide the Court with a final list of victims within 21-days of Defendant Iakovlev's sentencing. However, with additional victims coming forwarded, and the highly particularized nature of the restitution owed to each, the Government's task proved to be unfeasible at this time. Therefore, the Court must determine the best path forward, balancing the interests of all victims, while avoiding needless delay in sentencing those defendants who have taken responsibility.

## II. STANDARD OF REVIEW

The Mandatory Victim Restitution Act (the "MVRA") provides that, "when sentencing a defendant convicted of an [applicable] offense … the court <u>shall</u> order, in addition to … any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1) (emphasis added).[2] Restitution under the MVRA is mandatory and, thus, the Court is required to "order restitution to <u>each victim in the full amount of each victim's losses</u> as determined by the court,"

---

[2] The MVRA applies to offenses as described under 18 U.S.C. § 3663A(c)(1). Relevant here, the MVRA applies to "an offense against property under [Title 18] … including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). An offense "against property" also includes offenses resulting in monetary loss. *E.g.*, *United States v. McDaniel*, 398 F.3d 540, 554 (6th Cir. 2005) (holding that the MVRA applied to bank fraud, as it was an offense "against property … committed by fraud or deceit"); *United States v. Luis*, 765 F.3d 1061, 1065-66 (9th Cir. 2014) (re-affirming that offense causing "pecuniary loss" was "against property" under MVRA); *United States v. Turner*, 718 F.3d 226, 236 (3d Cir. 2013) (holding that conspiring to defraud the IRS was offense "against property" under MVRA because taxes owed are the "property" of the IRS and "[d]epriving a person of something that lawfully belongs to him does not render whatever is owed *not* his property"). Further, the Sixth Circuit has upheld application of the MVRA to RICO cases specifically. *See*, *e.g.*, *United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015).

3

without regard for the defendant's ability to pay. 18 U.S.C. § 3664(f)(1)(A) (emphasis added).

The MVRA defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered," and "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2); *United States v. Winans,* 748 F.3d 268, 272-73 (6th Cir. 2014).

The Government bears the burden of demonstrating the victims' loss amounts and "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e). And while the Court does not need to make specific factual findings in calculating restitution, "the information underlying an award must have 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Sawyer*, 825 F.3d 287, 295 (6th Cir. 2016) (quoting *United States v. Jackson–Randolph*, 282 F.3d 369, 386 (6th Cir. 2002)).

Pursuant to 18 U.S.C. § 3664(d)(5), "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government … shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." However, the United States Supreme Court has held that a sentencing court retains the ability to enter a restitution order outside the 90-day period prescribed by statute, particularly where the Court held

4

timely that restitution is applicable and left open only the specific amount owed. *Dolan v. United States*, 560 U.S. 605, 617-620 (2010).

## III.  ANALYSIS

Given the ability to defer a determination as to the specifics of restitution orders, this Court finds that the appropriate course in this case is to proceed with sentencing for each defendant, without needless delay.  At the time of sentencing, the Court will impose restitution in an amount based upon the Government's presentation of evidence on that date (and presumably in an amount at least equal to the restitution imposed for the co-defendant sentenced immediately prior).  However, the Court will defer identification of the victims, and the precise amount owed to each, until the conclusion of the case.  Thus, payment of restitution may commence immediately.  And the funds paid toward restitution thereafter will be held until the conclusion of the case, at which time a final restitution award will be imposed, in the specific amount of each victim's loss.

## IV.  CONCLUSION

Accordingly, the Court **ORDERS** that payment of restitution **SHALL** commence immediately upon entry of judgment.  The Court further **ORDERS** that the Clerk's Office and/or the finance office for the Southern District of Ohio **SHALL** collect and hold the restitution payments made by each defendant, to be distributed to victims after the final restitution order is entered at the conclusion of the case.

**IT IS SO ORDERED.**

Date:  11/25/2020

*Timothy S. Black* (signature)
Timothy S. Black
United States District Judge